UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TED ADDISON | CIVIL ACTION |
| VERSUS | NO. 13-5264 |
| CASEY McVEA ET AL. | SECTION "R" (2) |

## **REPORT AND RECOMMENDATION**

Plaintiff Ted Addison is a convicted prisoner currently incarcerated in the Rayburn Correctional Center in Angie, Louisiana ("Rayburn"). He is pursuing a single claim that defendants have provided him with constitutionally inadequate medical care for his severe degenerative disc disease, which the court has found states a claim for relief sufficiently to require further proceedings. Plaintiff seeks monetary compensation and injunctive relief.

Addison's Motion for Institutional Transfer is currently pending in this matter. Record Doc. No. 52. Defendants filed a written opposition to plaintiff's motion. Record Doc. No. 54. Plaintiff's motion states in pertinent part that he seeks transfer from Rayburn to another prison facility, specifically Elayn Hunt Correctional Center, "to maintain a healthy degree of equanimity." Record Doc. No. 52 at p. 1. He alleges that at Rayburn, where the principal defendants in this case continue to work, he is subject to "mental and physical intimidation tactics" intended to compel him to "cease the prosecution of [this] pending law suit." Id. at p. 2. He alleges that "this situation is on the verge of giving birth to a physical altercation, . . . [which] is the primary reason for

requesting I be returned to Elayn Hunt Correctional Center," where he believes he will receive "proper treatment for the injury" that is the basis of this lawsuit. Id. at pp. 3-4. Plaintiff claims both in the underlying lawsuit and in this motion that he is not receiving proper care at his current place of incarceration.

Framed in proper procedural terms, Addison's request for a transfer to another prison facility, where he would be both separated from the defendants and provided with what he asserts would be proper and better medical care, is actually a request for preliminary injunctive relief under Fed. R. Civ. P. 65. Whether to grant or deny a preliminary injunction rests within the district court's discretion. Janvey v. Alguire, 647 F.3d 585, 589, 592 (5th Cir. 2011). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements" established by the case law. Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs, 692 F.3d 343, 348 (5th Cir. 2012) (quotation omitted) (emphasis added); accord Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

To obtain a preliminary injunction, plaintiff must "demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that [the] substantial injury outweighed the threatened harm to the party whom he sought to enjoin, and (4) that granting the preliminary

injunction would not disserve the public interest." Planned Parenthood, 692 F.3d at 348 (citation omitted) (emphasis added); cf. Winter, 555 U.S. at 20 (framing the third element as a showing "that the balance of equities tips in [the requesting party's] favor").

In this instance, plaintiff fails to establish any of the four prerequisites for preliminary injunctive relief. As to the likelihood of success on the merits of his medical care claim, this court has ruled at this time only that plaintiff has stated a claim requiring further proceedings, not that he is likely to succeed. Plaintiff faces the daunting burden of proving "deliberate indifference" at trial, which the Fifth Circuit has described as a "stringent standard of fault," Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997), requiring proof of much more than mere negligence or even malpractice. Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). In addition to putting plaintiff to this demanding burden of proof, defendants have and will shortly be asserting by summary judgment motion the potent defense of qualified immunity. Record Doc. No. 50. Plaintiff has already received the surgical procedure he sought when his complaint was initially filed. Whether the delay he experienced in receiving the surgery was reasonably justified by factors demonstrating defendants' good faith sufficient to support the qualified immunity defense is a serious question that appears just as likely to be resolved in defendants' favor as in plaintiff's.

As to the likelihood of success on the merits of the transfer request itself and plaintiff's complaints of threats if he does not drop this lawsuit, neither assertion has merit standing on its own. As to transferring to another facility, it is clear that a prisoner has no right of any kind springing from the Constitution itself to be housed in any particular facility or to be transferred from one prison facility to another, even if medical treatment in one prison may be preferable to that in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Fuselier v. Mancuso, 354 F. App'x 49, 49 (5th Cir. 2009) (citing Olim, 461 U.S. at 245; Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996)); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995). Thus, the Fifth Circuit has squarely held: "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000).

Constitutionally protected liberty interests may be created not only by the Constitution itself, however, but also by state law. Not every state statute creates a liberty interest protected by the Constitution which prisoners might employ to obtain the requested transfer. A state statute creates constitutionally protected interests only if it establishes that state officials must take mandatory, non-discretionary actions in connection with the life, liberty or property of citizens. Olim, 461 U.S. at 249; Taylor

4

v. Jagers, 115 F. App'x 682, 684 (5th Cir. 2004) (citing Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989)); Lathers v. Nelson Coleman Corr. Ctr., No. 10-128, 2010 WL 1489903, at *3 (E.D. La. Mar. 22, 2010) (Shushan, M.J.), report & recommendation adopted, 2010 WL 1485468 (E.D. La. Apr. 13, 2010) (McNamara, J.). Thus, state statutes that vest officials with broad discretion to carry out their official functions do not create constitutionally protected interests that may form the basis for an action under Section 1983. See Olim, 461 U.S. at 249-50 (Hawaii prison regulations vesting prison administrators with broad discretion concerning inmate placement and transfers create no liberty interest protected under the Due Process Clause); Merit v. Lynn, 848 F. Supp. 1266, 1267-68 (W.D. La. 1994) (Louisiana parole statute is broadly discretionary and creates no constitutionally protected liberty interest).

In the instant case, Addison's request for a prison transfer is governed by La. Rev. Stat. § 15:824(A), which states: "[A]ny individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department" (emphasis added). This statute vests extremely broad discretion in Louisiana Department

5

of Corrections ("DOC") officials who are responsible for the placement of state prisoners.

Thus, in a case involving the Louisiana DOC statutory scheme, the Fifth Circuit has clearly held that "a prisoner has no liberty interest in being housed in any particular facility." Yates, 217 F.3d at 334. Similarly, one Louisiana appellate court stated, in interpreting La. Rev. Stat. § 15:824 and vacating the order of a trial judge who attempted to require the DOC to remove convicted state prisoners from one prison to another, "The legislature by these enactments has manifested a clear intent to leave the physical placement of prisoners within the jurisdiction of the DOC alone." State v. Sylvester, 648 So. 2d 31, 33 (La. App. 4th Cir. 1994) (emphasis added); accord Oglesby v. Gusman, No. 09-3593, 2009 WL 3254145, at *3-4 (E.D. La. Oct. 7, 2009) (Vance, J.); Andrews v. Belt, No. 07-CV-1283, 2007 WL 3046130 (W.D. La. Oct. 2, 2007) (Kirk, M.J.), aff'd, 274 F. App'x 359 (5th Cir. 2008).

The State of Louisiana by its broadly discretionary statutes has not created a protected liberty interest in being housed in a particular prison or being transferred from Rayburn to another facility. Addison has no constitutional or state law basis for his request for an order requiring that he be housed in a particular facility over another.

Finally, plaintiff's allegations that he has been subjected to threats and verbal harassment by defendants allege nothing that provides factual or legal support for the

extraordinary remedy he seeks. As the Fifth Circuit noted in Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995), "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citation omitted); accord Watson v. Winborn, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at * 2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

Beyond the serious doubts outlined above concerning plaintiff's likelihood of success on the merits, none of the other three bases that must be established before preliminary injunctive relief might be appropriate have been demonstrated on this record. There is no substantial threat of irreparable injury if plaintiff is not transferred. He has already received his surgery, the principal injunctive relief he sought when he initially filed suit, and the record indicates that he is receiving some followup care, even if he is dissatisfied with its scope and quality. As outlined above, prison officials have substantial discretion in their administration of prison transfers, and it has not been shown that plaintiff's risk of injury outweighs the potential harm to legitimate prison administrative functions that would result from the kind of intrusive court intervention

7

in prison affairs requested by plaintiff. There is no basis for a finding that granting the requested injunction would not disserve the public interest.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Motion for Institutional Transfer, Record Doc. No. 52, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[1]

New Orleans, Louisiana, this ___10th___ day of September, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[1] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

8